## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AUSTIN INVESTMENT FUND, LLC, by and through BRUCE ELIEFF,<br><br>    Plaintiff<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant | Civil Action No. 11-2300 (CKK) |

### MEMORANDUM OPINION
(November 19, 2015)

This case revolves around a portfolio of non-performing loans acquired from Chinese

banking entities and related tax deductions and losses claimed by Austin Investment Fund, LLC,

("Austin"). Through a Notice of Final Partnership Adjustment ("FPAA"), the Internal Revenue

Service ("IRS") notified Austin that it was disallowing various deductions and losses taken by

Austin for tax years 2003 and 2004. Among other grounds for disallowing these deductions and

losses, the IRS relied on section 482 of the Internal Revenue Code, which allows the IRS to

adjust or reallocate income, deductions, and other tax items among entities commonly controlled

or owned if that adjustment or allocation "is necessary in order to prevent evasion of taxes or

clearly to reflect the income" of any such entities. 26 U.S.C. § 482. Plaintiff brought this action

challenging the adjustments to the partnership items set out in the FPAA issued to Austin.

Presently before this Court are Plaintiff Bruce Elieff's [114] Motion for Partial Summary

Judgment and Defendant's [118]/[119] Cross-Motion for Partial Summary Judgment. Although

Plaintiff's challenge as a whole is not limited to the application of section 482, the motions

before the Court are limited to the application of that provision of the Internal Revenue Code.

Specifically, Plaintiff argues that the application of section 482 with respect to Austin for tax

years 2003 and 2004 was unlawful. Defendant United States opposes Plaintiff's motion for

partial summary judgment and cross-moves for partial summary judgment in its favor regarding

the application of section 482. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record for purposes of this motion, the Court DENIES Plaintiff's Motion for Partial Summary Judgment and GRANTS Defendant's Cross-Motion for Partial Summary Judgment. The Court concludes that section 482 is applicable to the items at issue in this action and sustains the IRS's disallowance of deductions and losses for 2003 and 2004 on the grounds of the application of section 482.

## I. BACKGROUND

The Court includes a brief presentation of the basic facts underlying this case and reserves further presentation of the facts for the discussion of the cross-motions for partial summary judgment below.

In 1999, each of the four big commercial banks in the People's Republic of China, including Bank of China, transferred its portfolio of non-performing loans to a separate "bad bank," called asset management companies. Pl.'s Statement of Material Facts in Support of Elieff's Motion for Partial Summary Judgment ("Pl.'s Statement"), ECF No. 14, ¶ 10. Bank of China transferred its non-performing loan portfolio to the China Orient Asset Management Corporation ("China Orient"). *Id.* ¶ 10. Through the transactions between the commercial banks

---

[1] The Court's consideration has focused on the following documents:

- Pl. Bruce Elieff's Mot. for Partial Summary Judgment ("Pl.'s Motion"), ECF No. 114;
- Def.'s Opp'n to Pl.'s Mot. for Partial Summary Judgment and Cross-Motion for Partial Summary Judgment ("Def.'s Cross-Motion"), ECF Nos. 118-119;
- Elieff's Reply in Support of His Motion for Partial Summary Judgment ("Pl.'s Reply"), ECF No. 121;
- Elieff's Opposition to U.S. Cross-Motion for Partial Summary Judgment ("Pl.'s Opp'n"), ECF No. 124; and
- Def.'s Reply Brief in Support of Cross-Motion for Partial Summary Judgment Re Section 482 ("Def.'s Reply"), ECF No. 125.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

and the asset management companies, the Chinese government divided its banking system into "good banks," the big four state-owned commercial banks, and "bad banks," the four asset management companies. *Id.* ¶ 11.

Austin Investment Fund LLC was one of eight entities created to acquire an undivided interest in the Yuanjiang portfolio—a portfolio of non-performing loans—from China Orient. *Id.* ¶ 13. The Yuanjiang portfolio had a face value of approximately $217,377,027 when China Orient acquired the portfolio from Bank of China. *See id.* ¶ 13 (citing Hahn Decl. ¶ 11); Decl. of Roy E. Hahn to Correct a Typing Error ¶ 3 ("The figure of $271,337,027 in Paragraph 11 should have been $217,337,027"); *see also* Def.'s Statement of Genuine Issues with Respect to Pl.'s Mot. for Partial Summary Judgment ("Def.'s Statement of Genuine Issues"), ECF No. 118, ¶ 6. As a result of a transaction orchestrated by Chenery Associates Incorporated and its owner Roy E. Hahn, Austin received a 23% percent share in the Yuanjiang portfolio.[2] Pl.'s Statement ¶¶ 6, 19; *see also* Def.'s Statement of Genuine Issues ¶ 7. This transaction followed a valuation analysis by PricewaterhouseCoopers on behalf of Chenery regarding portfolios of Chinese non-performing loans. *Id.* ¶ 15. Subsequently, Austin's share of the Yuanjiang portfolio was reduced from 23% to 19.24%. *Id.* ¶ 24.

The IRS issued a Notice of Final Partnership Administrative Adjustment ("FPAA") to Austin, dated December 15, 2014, with respect to tax years 2003 and 2004. *Id.* ¶ 28; Compl., Ex. A (Form 886-A). In the FPAA, the IRS proposed disallowing the entirety of Austin's claimed losses and deductions for 2003 and 2004 attributable to the Yuanjiang portfolio—on the basis of the application of section 482, as well as on other grounds. Compl., Ex. A (Form 886-A), ¶ 9;

---

[2] Other details of the series of transactions surrounding the acquisition of the loan portfolio by Austin, including facts pertaining to parties' dispute whether Austin was a bona fide partnership, are immaterial to the motions currently pending before the Court.

Def.'s Statement of Material Facts in Support of Cross Motion for Partial Summary Judgment on

Section 482 ("Def.'s Statement of Material Facts"), ECF No. 118, ¶ 42. Plaintiff brought this

action, pursuant to 26 U.S.C. § 6226, challenging the proposed adjustments in the FPAA. The

cross-motions now before Court concern only the application of section 482 as grounds for

disallowing losses or deductions claimed by Austin for tax years 2003 and 2004.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar

summary judgment; the dispute must pertain to a "material" fact. *Id*. Accordingly, "[o]nly

disputes over facts that might affect the outcome of the suit under the governing law will

properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to

the relevant facts; the dispute must be "genuine," meaning that there must be sufficient

admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to

specific parts of the record – including deposition testimony, documentary evidence, affidavits or

declarations, or other competent evidence – in support of its position, or (b) demonstrate that the

materials relied upon by the opposing party do not actually establish the absence or presence of a

genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis

in the record cannot create a genuine dispute sufficient to survive summary judgment. *See Ass'n*

*of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp*., 564 F.3d 462, 465-66 (D.C. Cir. 2009).

Moreover, where "a party fails to properly support an assertion of fact or fails to properly address

another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

### III. DISCUSSION

Both Plaintiff's Motion for Partial Summary Judgment and Defendant's Cross-Motion for Partial Summary Judgment pertain to the application of section 482 of the Internal Revenue Code to Austin Investment Fund, LLC, for tax years 2003 and 2004. As explained above, in the Notice of Final Partnership Administrative Adjustment issued for Austin, the IRS disallowed certain claimed losses and deductions included on Austin's tax return for tax years 2003 and 2004. Among other bases for disallowing those losses and deductions, the IRS relied on the application of section 482, which allows the IRS to re-allocate various items reported on tax

returns, including income, deductions, and basis in assets. Each party seeks the entry of partial summary judgment with respect to the application of section 482. For the sake of clarity, the Court first addresses Plaintiff's arguments for partial summary judgment and then addresses Defendant's arguments for the entry for partial summary judgment in its favor.

## A.  Plaintiff's Motion for Partial Summary Judgment

Plaintiff presents three arguments why partial summary judgment should be entered in its favor with respect to section 482. First, Plaintiff argues that the section 482 is inapplicable to the entities in question—Bank of China and China Orient—because they are not controlled by the Chinese government. Second, Plaintiff argues that the application of section 482 was arbitrary and capricious because of the IRS's failure to explain the allocation and to provide any evidence for that allocation in the FPAA. And, third, Plaintiff argues that the act of state doctrine precludes the IRS from reallocating tax items with respect to the entities in question under section 482. The Court addresses, in turn, each argument.

### 1.  Ownership and Control of Bank of China and China Orient

Under section 482, the IRS may reallocate income, deductions, or other tax items "[i]n any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests." 26 U.S.C. § 482. Plaintiff argues that section 482 is inapplicable because *Bank of China* and *China Orient* were not commonly controlled. Plaintiff also suggests that the IRS may not apply section 482 with respect to Austin because *Austin* was not under common ownership or control with *China Orient*.

With respect to the relationship between Bank of China and China Orient, Plaintiff misunderstands the import of the statutory language, which allows the IRS to take action when

"two or more organizations … [are] owned *or* controlled directly or indirectly by the same interests." *Id.* § 482 (emphasis added). The statute does not require *both* ownership *and* control; it requires only one or the other. *Sunshine Dep't Stores, Inc. v. C.I.R.*, 42 T.C.M. (CCH) 1379 (T.C. 1981) *aff'd sub nom. Sunshine Dep't Stores, Inc., v. Internal Revenue Serv.*, 705 F.2d 470 (11th Cir. 1983) ("[T]he relevant language of section 482 is phrased in the disjunctive: either common ownership or control, directly or indirectly, will suffice."). While Plaintiff acknowledges the language of the statute, Plaintiff nonetheless argues *only* that there is no common control of Bank of China and China Orient. Indeed, Plaintiff acknowledges that those entities were both owned by the Chinese government. *See* Pl.'s Mot. at 6 ("[T]he Chinese government set up four Asset Management Companies ("AMCs") to take on and resolve debt from each of the big four *state-owned* commercial banks, including: … The Bank of China") (emphasis added); *id*. at 7 ("China Orient and the other three AMCs are all Chinese *state-owned* companies.") (emphasis added). While the parties dispute whether or not Bank of China and China Orient were under common control, the Court need not address that issue because it is undisputed that they were under common ownership—which is sufficient to allow the application of section 482.

Plaintiff relies primarily on the decision of a district judge from the Northern District of Texas in *Southgate Master Funds, LLC v. United States*, 651 F. Supp. 2d 596 (N.D. Tex. 2009), *aff'd* 659 F.3d 466 (5th Cir. 2011). Like this case, *Southgate* was a case pertaining to the acquisition of Chinese non-performing loans, in which a partnership, Southgate Master Funds, LLC, challenged the adjustment of partnership items through the FPAA that the IRS had issued to that entity. In *Southgate*, the district court upheld the IRS's disallowance of the losses that Southgate had claimed on the ground that the Southgate partnership was a sham for tax purposes.

*Southgate*, 659 F.3d at 478. But the district court disallowed the IRS's imposition of penalties, reasoning that Southgate had established a complete defense to accuracy-related penalties. *Id.* In addition, the district court concluded that the IRS could not rely on section 482 to disallow Southgate's losses because (1) the district court was not convinced that section 482 was applicable to "two wholly foreign organizations" and (2) it was "not apparent to the Court that Cinda [the asset management company] and CCB [the bank] were commonly controlled despite overarching state ownership." *Southgate*, 651 F. Supp. 2d at 663. Plaintiff argues that the *Southgate* court's analysis of common control is applicable to the relationship between Bank of China and China Orient and, thus, is dispositive in this case. The Court disagrees.

As an initial matter, while Plaintiff emphasizes that the district court decision was affirmed on appeal by the Fifth Circuit—as it was—Plaintiff neglects to mention that the case was in fact affirmed on grounds unrelated to section 482. Indeed, the application of section of 482 was not even presented to the Fifth Circuit because plaintiff in that case appealed the disallowance of losses and the government appealed only the disallowance of the penalties; the government did not appeal the district court's rulings with respect to section 482. *See Southgate*, 659 F.3d at 478; Def.'s Reply at 7. In any event, the language of the district court in *Southgate* is at most persuasive authority, and it may be properly considered dicta since the district court did not rely on the analysis in arriving at its conclusion that the losses in question were properly disallowed—on other grounds. The Court concludes that the plain language of the statute requires a contrary conclusion.

As stated above, section 482 allows the IRS to made adjustments in the following circumstances:

> In any case of two or more organizations, trades, or businesses (whether or not incorporated, *whether or not organized in the United States*, and whether or not

affiliated) *owned or controlled directly or indirectly by the same interests*, the Secretary may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

26 U.S.C. § 482 (emphasis added). First, the clear language of the statute states that his provision applies to entities "whether or not organized in the United States." *Id.* Therefore, this provision is applicable to adjustments between Bank of China and China Orient even though neither entity is organized in the United States. Second, the clear language of the statute states that the provision is applicable to organizations "owned or controlled directly or indirectly by the same interests." *Id.* As explained above, the provision only requires *either* ownership *or* control, not both. *See Sunshine Dep't Stores.*, 42 T.C.M. (CCH) 1379. Because the two entities in question are both owned by the Chinese state—as Plaintiff acknowledges—the Court need not resolve the parties' dispute regarding common control over those entities.

Finally, because Bank of China and China Orient were under common ownership, it is immaterial whether Austin was under common control or ownership with China Orient. Section 482 is applicable to Bank of China and China Orient, allowing the IRS to adjust or allocate basis in the loan portfolio among those two entities. Having done so, no adjustment or allocation is necessary between China Orient and Austin to serve as the basis for applying section 482 in the FPAA. Because Austin claimed carry over basis from China Orient, the adjustment of basis with respect to China Orient necessarily means that any losses or deductions taken by Austin as a result of that carryover basis must be adjusted in light of any adjustments to the basis of China Orient. In sum, relying on section 482, the IRS's theory is that, even if China Orient could be

considered to properly contribute its basis in the non-performing loan portfolio to Austin,[3] this basis must be considered to be no more than China Orient's adjusted basis (in accordance with the percentage of the portfolio acquired by Austin). The Court agrees with the IRS that section 482 is applicable to the transaction between Bank of China and China Orient, with the corresponding implications for the deductions and losses taken by Austin in connection with the portfolio of loans that it acquired.

### 2.  Arbitrary and Capricious

Next, Plaintiff argues that the application of section 482 in the FPAA was arbitrary and capricious because the IRS failed to support the application of that section with any analysis or evidence and failed to specify and justify the IRS's assessment of the fair market value of the transaction between Bank of China and China Orient. Plaintiff's argument fails because Plaintiff continues to mistake the nature of this proceeding. The Court previously explained the nature of the proceeding in its Memorandum Order issued February 4, 2015, ECF No. 103, resolving Plaintiff's motion to compel:

> In this action pursuant to 26 U.S.C. § 6226, Plaintiff challenges the Final Partnership Administrative Adjustment ("FPAA") issued by the IRS to Austin Investment Fund, LLC, for the tax years ending Dec. 31, 2003, and Dec. 31, 2004. "The Commissioner's determinations in an FPAA are generally presumed correct, and a party challenging an FPAA has the burden of proving that the Commissioner's determinations are in error." *Crescent Holdings, LLC v. Comm'r of Internal Revenue*, 141 T.C. 477, 485 (2013). *Accord Sealy Power, Ltd. v. Comm'r of Internal Revenue*, 46 F.3d 382, 387 (5th Cir. 1995). Placing the burden of proof on Plaintiff is consistent with the rule that this Court "exercises de novo review of an FPAA and is not bound to follow the IRS's proposal." *Alpha I, L.P. ex rel. Sands v. United States*, 682 F.3d 1009, 1025 (Fed. Cir. 2012) (citing *Jade Trading, LLC v. United States,* 80 Fed. Cl. 11, 43 (2007)). *De novo* review also means that taxpayers are not limited to "evidence contained in the administrative

---

[3] While the IRS claims that Austin was not a bona fide partnership and therefore could not "contribute" its basis to Austin, that dispute is not material to the resolution of the pending motions.

> record or arguments made by the taxpayer at the administrative level." *Porter v. Comm'r Internal Revenue*, 130 T.C. 115, 122-23 (2008).
>
> Plaintiff is correct that this Court reviews reallocations of income or deductions under section 482—one among several bases for the adjustments in the FPAA at issue—for an abuse of discretion. *See id.* at 122-123. However, Plaintiff mistakes the import of that standard of review. The abuse of discretion standard does not change the nature of the overall proceeding: this Court considers reallocations for an abuse of discretion in a *de novo* proceeding. *See id.* at 122. "The traditional effect of applying an abuse of discretion standard in this Court is to alter the standard of review, not to restrict what evidence we consider in making our determination." *Ewing v. Comm'r of Internal Revenue*, 122 T.C. 32, 39 (2004), *vacated sub nom. Comm'r of Internal Revenue v. Ewing*, 439 F.3d 1009 (9th Cir. 2006). Specifically, review for abuse of discretion entails a heightened standard of review. *See id.* at 39 ("Courts have used various, but similar, phrases to describe the meaning of an abuse of discretion standard, such as: The taxpayer bears a heavy burden of proof, the Commissioner's position deserves our deference, and we do not interfere unless the Commissioner's determination is arbitrary, capricious, clearly unlawful, or without sound basis in fact or law."). Importantly, in applying the abuse of discretion standard, courts "focus on the reasonableness of the result, not on the details of the methodology used." [*InverWorld*], *Inc. v. Comm'r of Internal Revenue*, 71 T.C.M. 3231 (T .C. 1996), *aff'd* 979 F.2d 868, 869 (D.C. Cir. 1992).

Mem. Order, dated Feb. 4, 2015, ECF No. 13 (footnotes omitted). That assessment of the scope of these proceedings remains applicable today. In short, in this *de novo* action, the Court reviews the substantive determinations made in the FPAA, not the methodology used by the IRS to arrive at the determinations in the FPAA. *See Kenco Restaurants, Inc. v. C.I.R.*, 206 F.3d 588, 596 (6th Cir. 2000) ("[T]he Commissioner is not required to support the notice of deficiency with proof because courts generally do not examine the underlying motives or policy of the Commissioner's determination."). Plaintiff's statement that this action is under the Administrative Procedure Act ("APA") is simply incorrect, and there is no basis to conclude that the proper analysis in this *de novo* proceeding is similar to the analysis applicable under the APA.

Plaintiff's reliance on *Veritas Software v. C.I.R.*, 133 T.C. 297, No. 14 (2009)—the only case Plaintiff cites in support of this portion of his argument—is unavailing. In *Veritas Software*, the Tax Court concluded, after trial, that the IRS had not provided support for the methodology

used, that the factual findings undermined the IRS's initial determination, and that the IRS had used the wrong discount rate in arriving at the adjustments at issue. *See id.* at 320. The Tax Court concluded that, in light of the proceedings at trial, the initial determination by the IRS was substantively arbitrary, capricious, and unreasonable.[4] Nowhere did the Tax Court suggest that the determination was arbitrary or capricious because of the failure of the IRS to justify the determination in the notice issued to the taxpayer. Accordingly, *Veritas Software* provides no support for Plaintiff's argument that the section 482 adjustment in the FPAA was arbitrary and capricious because of any lack of support in the FPAA itself.

The Court returns below to Defendant's argument that summary judgment is warranted in its favor regarding the application of section 482, but for the moment no further analysis is needed to reject Plaintiff's argument for summary judgment on this particular front. The IRS had no duty to provide additional explanation, analysis, or evidence in the FPAA, and Plaintiff may not overturn the determinations in the FPAA on that basis.

### 3. Act of State Doctrine

Finally, Plaintiff argues that the act of state doctrine precludes the IRS from applying section 482 to the transactions at issue in this case. In essence, Plaintiff argues that because Chinese law mandated a certain price for the transfer of the non-performing loan portfolio from Bank of China to China Orient—a price that Defendant contends was substantially above the fair market value of the portfolio—the IRS is bound to adopt the price set by Chinese law in applying

---

[4] "In sum, respondent, without meaningful explanation, conceded $825 million of the buy-in amount set forth in the notice and at trial failed to offer even a token defense in response to petitioner's critique of Becker's conclusions. Moreover, respondent cannot convincingly contend that the notice allocations are reasonable while adopting the opinion of an expert who admits that a critical factor relating to the calculation of the allocation is incorrect. Accordingly, respondent's notice determination is arbitrary, capricious, and unreasonable." *Veritas Software*, 133 T.C. at 320.

U.S. tax laws. To do otherwise, Plaintiff claims, would violate the act of state doctrine. The Court disagrees.

The act of state doctrine "directs United States courts to refrain from deciding a case when the outcome turns upon the legality or illegality (whether as a matter of U.S., foreign, or international law) of official action by a foreign sovereign performed within its own territory." *Riggs Nat. Corp. & Subsidiaries v. C.I.R.*, 163 F.3d 1363, 1367 (D.C. Cir. 1999). The doctrine "stems from separation of powers concerns; it reflects 'the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder' the conduct of foreign affairs." *Id.* (quoting *Kirkpatrick & Co., Inc. v. Environmental Tectonics Corp.,* 493 U.S. 400, 406 (1990)).

Contrary to Plaintiff's contention, the application of section 482 in this case does not involve determining the legality of the mandate, under Chinese law, that China Orient pay Bank of China full face value for the non-performing loan portfolio. It simply involves determining the meaning of that face-value acquisition for the purposes of United States tax law. The act of state doctrine does not require, as Plaintiff suggests, that the face-value acquisition requirement of Chinese law determine the application of United States tax laws. In fact, in *Riggs Bank*, on which Plaintiff relies, the D.C. Circuit Court of Appeals explained that "the Commissioner takes the foreign country's laws and requirements as given and determines their U.S. tax consequences 'by principles of U.S. law and not by principles of the law of the foreign country.' " *Id.* at 1369 (quoting Treas. Reg. § 1.901–2(a)(2)(i) (1998)). In *Riggs Banks*, the D.C. Circuit held that the IRS was required to treat a ruling of the Brazilian Minister of Finance—stating that certain types of tax payments were compulsory—as binding. *Id.* at 1368. However, the Court of Appeals noted that the IRS was not precluded from fashioning a tax regime that modified the treatment of the

payments in question for U.S. tax purposes, but noted that IRS had not done so. *Id.* at 1369. In this case, the IRS does not seek a declaration that any action of the Chinese government was illegal. It simply seeks the application of United States tax laws to the facts presented by the transactions underlying this action. The act of state doctrine does not bar the application of section 482 in this case.[5]

\*      \*      \*

In sum, the Court concludes that each of Plaintiff's arguments for summary judgment in its favor with respect to the application of section 482 fails. Specifically, section 482 is applicable to the parties involved in this case; any lack of analysis in the FPAA does not provide a basis to determine that the application of section 482 is arbitrary and capricious; and the act of state doctrine does not bar the application of section 482 in this case. Accordingly, the Court DENIES Plaintiff's motion for partial summary judgment. The Court next turns to Defendant's cross-motion for partial summary judgment.

## B.  Defendant's Cross-Motion for Partial Summary Judgment

Defendant argues that that partial summary judgment in its favor is warranted with respect to the application of section 482 on the grounds that China Orient's basis in the non-performing loans acquired must be reduced from $217 million to $21 million. Plaintiff responds

---

[5] None of the other cases that Plaintiff cites are to the contrary. Plaintiff relies on *In Re Philippine Nat'l Bank*, 397 F.3d 768 (9th Cir. 2005). But in that case, the Ninth Circuit concluded that the orders of the district court in that case violated the act of state doctrine because, to support those orders, "the district court necessarily (and expressly) held invalid the forfeiture judgment of the Philippine Supreme Court." *Id.* at 772. By contrast, this case does not require this Court to conclude that there was anything invalid or illegal about the payment of face value for the loan portfolio in order to comply with Chinese law. Plaintiff also relies on *Texaco, Inc. v. C.I.R.*, 98 F.3d 825 (5th Cir.), claiming that the case stands for the proposition that the act of state doctrine precludes the application of section 482. But *Texaco* simply did not involve the application of the act of state doctrine. *See id.* at 828-31 (analyzing the allocation of income under section 482 in light of prices mandated by the government of Saudi Arabia).

that there are genuine issues of material fact that preclude the entry of partial summary judgment in the government's favor. Before turning to the substances of the parties' arguments regarding section 482, the Court first discusses several evidentiary issues and procedural issues raised by the parties with respect to the briefing on the government's cross-motion.

### 1. Preliminary Issues

In its cross-motion for partial summary judgment, Defendant relies, in part, on transcripts of depositions of Philip Groves and of Roy Hahn. Plaintiff argues that Defendant may not rely on that evidence in support of its cross-motion for partial summary judgment because the filings did not include a certification by a court reporter, because the lines were not itemized,[6] and because there was no evidence that either witness was sworn. Defendant responds that it is entitled to rely on such evidence because a foundation could be laid for the evidence at trial. The Court agrees with Defendant that it was proper to rely on the evidence in the briefing on the cross-motion for partial summary judgment. Pursuant to Federal Rule of Civil Procedure 56, a party may support the assertion of a fact support a motion for summary judgment by "citing to particular parts of materials in the record, including *depositions*, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A) (emphasis added). A party may then "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The Advisory Committee Notes to the 2010 amendments to the rules explain further that "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form

---

[6] As the lines in the two contested exhibits appear to have been itemized, in fact, the Court assumes that Plaintiff relies on the fact that citations to those transcripts in Defendant's statement of facts only referred to the deposition pages, but not to the individual lines.

that is anticipated." *Id.* (Advisory Notes, 2010 Amendments). Defendant represents that a proper

foundation could be laid for this evidence at trial. Plaintiff has provided no reason to doubt that

the material in the depositions could, in fact, be presented in admissible form at trial. Therefore,

the Court agrees that, because the deposition testimony could be introduced in a form admissible

at trial, it is proper for Defendant to rely on it in support of its cross-motion for partial summary

judgment.[7] Furthermore, it is important that Plaintiff never claims that the material in those

depositions is untrue; Plaintiff objects to Defendant's reliance on that testimony on purely

technical grounds. *See* Pl.'s Opp'n at 7. Indeed, the Court has thoroughly reviewed the record,

including the Hahn declarations provided by Plaintiff, and there is no evidence in the record that

contradicts the assertions on which the Court relies from the Hahn or Groves depositions.

Accordingly, the Court concludes that it is proper for Defendant to rely on the Hahn and Groves

depositions in support of its cross-motion for partial summary judgment.

---

[7] The sole case on which Plaintiff relies in support of its argument that Defendant may not rely on the Groves and Hahn depositions, *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002), is not to the contrary. Most importantly, this Ninth Circuit case was issued prior to the 2010 Amendments to the Federal Rules of Civil Procedure. After those amendments, pursuant to Rule 56(c), a party seeking to rely on evidence must only show that the evidence "is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2) (Advisory Notes, 2010 Amendments). Specifically, in *Orr*, the Ninth Circuit Court of Appeals concluded that a party could not rely on certain deposition testimony because it was not authenticated. 284 F.3d at 774. However, authentication is no longer required in the context of summary judgment. *See In re Akers*, 485 B.R. 479, 484 (D.D.C. 2012) *aff'd*, 598 F. App'x 4 (D.C. Cir. 2015) ("Recent amendments to Rule 56 'eliminate[ ] the unequivocal requirement that documents submitted in support of a summary judgment motion must be authenticated.' ") (citation omitted). Insofar as Plaintiff relies on *Orr* for the proposition that Defendant may not rely on the depositions because Defendant cited to the depositions only by *page number*, but not by *line number* as well, *Orr* is again inapposite. In *Orr*, the Ninth Circuit only held that "when a party relies on deposition testimony in a summary judgment motion without citing to page and line numbers, the trial court *may in its discretion* exclude the evidence." 784 F.3d at 775 (emphasis added). In this case, Defendant cited to page numbers in the depositions, and those citations are sufficient to identify the material on which Defendant relies. The absence of line number citations provides no basis to exclude the depositions as evidence in these circumstances.

Next, in Plaintiff's opposition to Defendant's cross-motion for partial summary judgment, Plaintiff seeks to rely on a declaration by Ross Newman, a former IRS economist. Defendant argues that Plaintiff may not rely on this declaration because it fails to meet the requirements of Rule 56. The Court agrees with Defendant that Plaintiff may not rely on this declaration. Pursuant to Rule 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The Court agrees with Defendant that the matters within the declaration are outside the scope of declarant's personal knowledge as, with very limited exceptions, they consist of his legal analysis of issues pertaining to this case and of his general statements regarding the substantive issues in this case. *See, e.g.*, Newman Decl. ¶ 5 ("The defendant has NOT established that ICBC or the three other commercial banks were controlled by the government of the People's Republic of China"); *id.* ¶ 7 ("The IRS' application of Section 482 is fatally flawed."). The few statements that appear to be based on personal knowledge only present basic information regarding declarant's professional background and his actions reviewing materials in this case; they are insufficient, on their own, to support any of the claims in Plaintiff's briefing. *See* Newman Decl. ¶ 1 ("I am Ross Newman, the same Ross Newman that provided a declaration in support of Elieff's Motion for Partial Summary Judgment."); *id.* ¶ 2 ("I have reviewed the U.S. Motion for Summary Judgment and the Legal Memorandum and related filings."); *id.* ¶ 10 ("As a former IRS economist that worked in examination, we were trained to follow the regulations and other sources of legal guidance issued by the IRS or Treasury. Court cases were given less emphasis because the 'hazards of litigation' were addressed at the appeals level. Then develop factual determinations.").

17

Moreover, Newman may not testify as an expert at trial, because he was never identified as an expert during discovery and because the Court previously concluded that there was no basis to extend the deadline for expert disclosures to allow such a disclosure. *See* Memorandum Order, dated February 5, 2015, ECF No. 103 (denying Plaintiff's motion to compel and concluding that there would be no basis for renewed motion to extend deadline for expert disclosures); *see also* Order dated Dec. 23, 2014, ECF No. 93 (denying without prejudice Plaintiff's request to extend deadline for expert disclosures to allow identification of Dr. Ross Newman as expert witness). Because the history of this case, particularly proceedings regarding the disclosure of expert witnesses, is somewhat convoluted, the Court here sets out the sequence of events underlying the Court's conclusion that there was no basis to extend the deadline for expert disclosures:

- In its initial [52] Scheduling and Procedures Order, this Court provided the parties with approximately eleven months to conduct discovery. *See* Scheduling and Procedures Order, ECF No. 52, at 5 (April 23, 2012 Order setting close of discovery for March 29, 2013). On July 9, 2012, roughly two and half months into the discovery period, the Court stayed discovery due to the illness of Plaintiff's counsel. *See* Minute Order (July 9, 2012). Discovery remained stayed until June 4, 2014. *See* Order, ECF No. 84, at 2 (June 4, 2014, Order lifting stay on discovery.)

- The Court lifted the stay on discovery June 4, 2014, as of that date, and set deadlines for the remaining discovery. *Id.* Proponents' expert disclosures were due December 4, 2014; opponents' expert disclosures were due January 15, 2015; and replies were due February 9, 2015. *Id.* Discovery was set to close on February 19, 2015. *Id.* at 3.

- On December 4, 2014, the date Plaintiff's expert disclosures were due, Plaintiff filed a [91] Motion for Additional Time To File Rule 26(A)(2)(B) & (C) Disclosures with Respect to any Expert Witness List and Testimony and the Later Deadlines, seeking an "additional 150 days so that Elieff can determine what additional experts he will need and give his experts time to prepare reports." Plaintiff explained that, "[t]hen, a disclosure of expert witness and testimony can be prepared and filed." The motion was based, in part, in Plaintiff's claim that the United States had failed to provide certain information in discovery, which Plaintiff claimed was necessary in order to hire an expert. Pl.'s Mot., ECF No. 91, at 1-2. By Minute Order issued on December

8, 2014, the Court struck Plaintiff's motion because Plaintiff had failed to comply with the rules applicable to filling such motions, specifically the requirement of Local Civil Rule 7(m) that a party confer with opposing counsel prior to filing any non-dispositive motion . The Court also noted, in the Minute Order, that Plaintiff did not comply with the Court's Scheduling and Procedures Order that requires filing motions for extensions of time at least four business days before the first affected deadline.

- On December 19, 2014, Plaintiff filed a [92] Motion for Leave to File the Motion within the 4 Day Period of the Court's Scheduling and Procedures Order and to Extend the Time to Disclose Expert Witness and to Extend all Future Deadlines by 150 Days. Plaintiff's counsel reported that he had identified a potential expert witness—Dr. Ross Newman, whose declaration is at issue in the motions now before the Court—shortly before the expert deadline. The motion essentially requested the same relief as requested in the motion filed December 4, 2014, which the Court had stricken. Plaintiff reported that he intended to bring motions to compel against the United States in order to compel the production of information that it claimed was necessary for his expert witness disclosures. Counsel for the United States did not consent to the relief requested in the motion.

- On December 23, 2014, the Court denied without prejudice Plaintiff's [92] Motion for Leave to File, which had requested the extension to the expert witness disclosure deadline and other discovery deadlines. *See* Order, ECF No. 93. In denying the motion, the Court emphasized that it previously set a firm schedule for the remaining 8.5 months of discovery, but that Plaintiff raised these issues on the same day as the expert disclosure deadline, only three months before the close of discovery, and requested approximately *5 additional months* for the remaining discovery. The Court also emphasized that, as of the date of the order, Plaintiff had yet to file his planned motion to compel. The Court noted that the request for an extension was dependent on at least partial success on a motion to compel; without success on the motion to compel, there would be no expert testimony to disclose. Therefore, the Court denied without prejudice the motion, and required Plaintiff to file any intended motion to compel by no later than January 15, 2015. The Court stated that it would entertain a renewed motion for extension of time only if Plaintiff succeeded, at least in part, on the planned motion to compel.

- On December 30, 2014, Plaintiff filed his [94] Motion to Compel Defendant United States to Comply with Discovery. After that motion was fully briefed, as well as after other filings by Plaintiff not relevant here, the Court denied the motion to compel. *See* Memorandum Order, dated February 4, 2015, ECF No. 103. The Court concluded that, given the scope of these *de novo* proceedings, Plaintiff had not shown that the any of Defendant's discovery responses were inadequate and all of Plaintiff's

arguments in support of its Motion to Compel were, thus, unavailing. The Court
further noted that, in light of the Court's resolution of the Motion to Compel, there
would be no basis to extend the deadline for expert witness disclosures or to extend
any other discovery deadlines.

In sum, Plaintiff did not identify any witnesses by the deadline set by the Court, December 4,

2014. Because Plaintiff's request to extend that deadline was contingent on an ultimately

unsuccessful motion to compel, the Court concluded that there was no basis to extend the

deadline for expert witness disclosures. Nor is there any reason to allow, at this time, testimony

by expert witnesses who were not properly disclosed. As a result, Plaintiff may not now rely on

declarations or other testimony by putative expert witnesses, such as Dr. Newman, who were not

disclosed before the applicable discovery deadline.

Lastly, with respect to the Newman declaration, as Defendant points out, the declaration

primarily consists of legal argument and legal conclusions, which are outside of the scope of

even expert testimony. *See U.S. ex rel. Mossey v. Pal-Tech, Inc.*, 231 F. Supp. 2d 94, 98 (D.D.C.

2002) (citing *See Burkhart v. Washington Metro. Area Transit Authority,* 112 F.3d 1207, 1212–13

(D.C. Cir. 1997)) ("It is established, however, that expert testimony consisting of legal

conclusions will not be permitted because such testimony merely states what result should be

reached, thereby improperly influencing the decisions of the trier of fact and impinging upon the

responsibilities of the court."); *see also* Fed. R. Evid. 702. Accordingly, the Court concludes that

Plaintiff may not rely on the Newman declaration in opposing Defendant's cross-motion for

partial summary judgment.

Next, Defendant points out that Plaintiff failed to include a statement of material facts in

opposition to Defendant's cross-motion for partial summary judgment. Pursuant to Local Civil

Rule 7(h), "[a]n opposition to such a motion [for summary judgment] shall be accompanied by a

separate concise statement of genuine issues setting forth all material facts as to which it is

contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement." LCvR 7(h)(1). Moreover, under Local Rule 7(h), "[i]n determining a motion for summary judgment, the court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." *Id.* As the Court stated previously in this case, this Court "**strictly adheres to the dictates of Local Civil Rule 7(h).**" Scheduling and Procedures Order, dated February 23, 2015, ECF No. 113 (emphasis in original). The Court furthermore stated, "The party opposing the motion must, in turn, submit a statement enumerating all material facts which the party contends are genuinely disputed and thus require trial." *Id.* Through that Scheduling and Procedures Order, the Court explicitly laid out the requirements for factual statements in support of motions for summary judgment and in opposition to motions to summary judgment, as laid out in the margin here.[8] Plaintiff has failed

---

[8] The Scheduling and Procedures Order stated as follows:

> (b) The moving party's statement of material facts shall be a short and concise statement, **in numbered paragraphs**, of all material facts as to which the moving party claims there is no genuine dispute. The statement must contain **only one factual assertion in each numbered paragraph**.

> (c) The party responding to a statement of material facts must respond to each paragraph with a **correspondingly numbered paragraph**, indicating whether that paragraph is admitted or denied. If a paragraph is admitted only in part, the party must specifically identify which parts are admitted and which parts are denied.

> (d) The Court may assume that facts identified by the moving party in its statement of material facts are **admitted**, unless such facts are controverted in the statement filed in opposition to the motion. Local Civil Rule 7(h)(1).

> (e) The responding party must include any information relevant to its response in its correspondingly numbered paragraph, with specific citations to the record. However, if the responding party has additional facts that are not directly relevant to its response, it must identify such facts in consecutively numbered paragraphs **at the end** of its responsive statement of facts. **If additional factual allegations are made, the**

to comply with these rules in responding to Defendant's cross-motion for partial summary judgment.

Plaintiff's motion for partial summary judgment was accompanied by a Statement of Material Facts in Support of Elieff's Motion for Partial Summary Judgment, as required by the Local Rules and this Court's Scheduling and Procedures Order. Similarly, Defendant's opposition to that motion for partial summary judgment and cross-motion for partial summary judgment complied with those rules as it included both Defendant's Statement of Material Facts in Support of Cross Motion for Partial Summary Judgment on Section 482 *and* Defendant's Statement of Genuine Issues with Respect to Plaintiff's Motion for Partial Summary Judgment. Defendant's Statement of Genuine Issues responded fact-by-fact to the statements in Plaintiff's Statement of Material Facts, including objections to certain of the Plaintiff's facts and explaining those objections. In opposing Defendant's cross-motion, Plaintiff included no "concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated," as required by the local rules and this Court's Scheduling and Procedures Order. LCvR 7(h)(1); *see also* Fed. R. Civ. P. 56(e) (Where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion"); *Grimes v. D.C.*, 794 F.3d 83, 92 (D.C. Cir. 2015) (Federal Rule of Civil Procedure 56(e) "allows a court to 'consider [a] fact undisputed' if it has not been properly supported or addressed as required by Rule 56(c). Indeed, for the evidentiary burden that Rule 56(c) places on nonmovant plaintiffs to

---

**opponent must file a responsive statement of its own**.

*Id.* (emphasis in original).

function, a court must be able to evaluate an inadequately supported assertion of material fact and deem it not materially disputed, such that summary judgment is warranted in whole or in part.") (quoting Fed. R. Civ. P. 56(e)).

It is no excuse that the Defendant's statement of facts accompanies its opposition and cross-motion or that Plaintiff already had included a statement of material facts with his motion for partial summary judgment. There is no exception for such circumstances in the Local Rules or in the Court's orders; Plaintiff is responding to Defendant's motion for partial summary judgment, and all of the rules applicable to responses to such motions are applicable in these circumstances. Moreover, the Court's Scheduling and Procedures explicitly states that, "**[i]f additional factual allegations are made [by a party responding to a motion for summary judgment], the opponent must file a responsive statement of its own**." Scheduling and Procedures Order, ¶ e (emphasis in original). Accordingly, the Court will "assume that facts identified by the moving party"—Defendant, in this case—"in its statement of material facts are admitted." LCvR 7(h)(1). That said, the Court notes that, with respect to the material facts underlying this motion, even canvassing the entire record before the Court on this motion—not simply limited to Defendant's uncontroverted Statement of Material Facts—the Court concludes that are no genuine issues of material fact that would preclude the entry of partial summary judgment for Defendant with respect to section 482, as explained in further detail below.

### 2.  Application of Section 482

"Section 482 gives [the IRS] broad authority to allocate income, deductions, credits, or allowances between commonly controlled organizations, trades, or businesses if he determines that the allocation is necessary to prevent the evasion of taxes or clearly to reflect the income of the controlled entities." *Sundstrand Corp. & Subsidiaries v. C. I. R.*, 96 T.C. 226, 352-53 (1991)

(footnote omitted). "The purpose of section 482 is to prevent the artificial shifting of the net incomes of controlled taxpayers by placing controlled taxpayers on a parity with uncontrolled, unrelated taxpayer." *Id.* (citing Treas. Reg. § 1.482-1(b)(1)). The IRS may "may make allocations under section 482 even in the absence of tax avoidance motives in order to clearly reflect the respective incomes of members of the controlled group." *Id.* (citing *G. O. Searle & Co. v. Commissioner*, 88 T.C. 252, 359 (1987)). "If an arrangement between related parties differs from those reached in an uncontrolled, arm's-length dealing, the Commissioner may reallocate under section 482." *Kenco Restaurants*, 206 F.3d at 595 (citing *Lufkin Foundry and Machine Co. v. Commissioner*, 468 F.2d 805, 807 n.2 (5th Cir. 1972)). Section 482 applies to basis adjustments, as well as to adjustments of income. Treas. Reg. § 1.482-1(a)(2). This section also applies to foreign organizations. 26 U.S.C. § 482 (section application to entities "whether or not organized in the United States"); Treas. Reg. § 1-482-1(i)(1) ("Organization includes an organization of any kind … irrespective of the place of organization, operation, or conduct of the trade or business, and regardless of whether it is a domestic or foreign organization, whether it is an exempt organization, or whether it is a member of an affiliated group that files a consolidated U.S. income tax return, or a member of an affiliated group that does not file a consolidated U.S. income tax return."). And this section applies to entities not subject to U.S. taxes. Treas. Reg. § 1.482-1(i)(3) ("Taxpayer means any person, organization, trade or business, whether or not subject to any internal revenue tax.").

As discussed above, with respect to Plaintiff's motion for partial summary judgment, the threshold requirement for the application of section 482 is a transaction between two or more entities that are commonly owned or controlled. The Court concludes, as explained above, that there is no genuine dispute of material fact regarding the common ownership of Bank of China

and China Orient. There is no factual basis for Plaintiff's statement in its opposition to Defendant's cross-motion for partial summary judgment that "China Orient Asset Management Company was not 'owned' by the Sovereign State of China as defined in Section 482." In support of this statement, Plaintiff cites only to the Newman declaration, which the Court concluded above could not serve as the basis for Plaintiff's opposition. Plaintiff never explains what it claims is the meaning of ownership pursuant to section 482. Moreover, as discussed above, Plaintiff previously acknowledged that the two entities were both *owned* by the Chinese state, even though he had contested whether they were commonly *controlled*. Finally, Plaintiff never responds through a separate statement of facts to statements in Defendant's Statement of Material Facts stating that the entities were state owned—statements originally derived from *Plaintiff's* motion for partial summary judgment—and the Court treats those facts as admitted. *See* Def.'s Statement of Material Facts. ¶ 11 (citing Plaintiff's Motion for Partial Summary Judgment at 6, 7) ("China Orient AMC and BOC [Bank of China] were both owned by the People's Republic of China"). Accordingly, the Court concludes that the threshold requirement of section 482 is satisfied.

It has long been established that the IRS "exercises broad authority under section 482." *Eli Lilly & Co. v. C.I.R.*, 856 F.2d 855, 860 (7th Cir. 1988). The determination of the IRS in the FPAA is presumptively correct. *See Sundstrand Corp.*, 96 T.C. at 353; *Kenco Restaurants*, 206 F.3d at 596. Moreover, a "section 482 determination must be sustained absent a showing that [the Commission of Internal Revenue] has abused his discretion." *Sundstrand Corp.*, 96 T.C. at 353. To overturn the presumption, a plaintiff first has the burden of "show[ing] that [the IRS's] section 482 allocations are arbitrary, capricious, or unreasonable." *Id.* "In reviewing the reasonableness of respondent's determination, the Court focuses on the reasonableness of the

result, not on the details of the methodology used." *Id.* If—and only if—Plaintiff satisfies this

first burden of proof, then Plaintiff " 'still ha[s] the burden of proving that [his] own allocation

satisfies the arm's length standard.' " *Kenco*, 206 F.3d at 596 (quoting *InverWorld, Inc.,* 71

T.C.M. (CCH) at 3237-62). "Should petitioner overcome respondent's presumption of

correctness and prove that the deficiencies set forth in the notice of deficiency are arbitrary,

capricious, or unreasonable, but fail to prove that alternative allocations it proposes satisfy the

arm's-length standard, the Court must determine from the record the proper allocation."

*Sundstrand*, 96 T.C. at 354.

        In its cross-motion for partial summary judgment, Defendant argues that Plaintiff has

failed to present any evidence to support $217 million (the face value price) as the arm's length

price for the loan portfolio purchased by China Orient. Defendant then argues that, absent any

evidence presented by Plaintiff and in light of the evidence presented by Defendant that supports

an arm's length price of $21 million, China Orient's basis in the non-performing loan portfolio

must be reduced to $21 million. The Court agrees. Plaintiff has presented no evidence that $217

million face value is the appropriate arm's length price for the loan portfolio. To the contrary, the

evidence Plaintiff presents shows that China Orient was required to pay the face value for the

loan portfolio regardless of the price that would have been required for a market value

transaction. *See* Pl.'s Statement ¶ 12. Defendant has presented evidence that supports the $21

million valuation, which Plaintiff has not controverted. Specifically, the parties agree that China

Orient acquired the Yuanjiang non-performing loan portfolio from Bank of China between 1999

and 2000 for approximately $217 million. Defendant's Statement of Material Facts ¶ 12.

Defendant has presented evidence showing that the actual value of the loan portfolio at that time

was approximately $21 million. *Id.* ¶ 13. Defendant has also produced evidence that the portfolio

of the non-performing loans was determined to be only 11% to 18% recoverable. *Id.* ¶ 22. Defendant has also produced evidence that the face value of portfolio when it was acquired from China Orient on December 23, 2001, was approximately $210 million and that the purchase price was approximately 10% of the face value ($21 million). *Id.* ¶ 22. Plaintiff has not controverted any of this evidence. Accordingly, the Court concludes that Plaintiff has not produced evidence to satisfy his burden of showing that the IRS's determination was "arbitrary, capricious, or unreasonable," and that, even if Plaintiff had satisfied this initial burden, Plaintiff has not provided any evidence to rebut the proposed arm's length price of $21 million. Nor has Court identified any evidence in the record on which Plaintiff may rely for the purposes of defeating summary judgment that suggests an arm's length price greater than $21 million.

The Court next turns to Plaintiff's several arguments in opposition to Defendant's motion for partial summary judgment. Because the Court concludes that none of those arguments succeed, the Court's conclusion that the evidence supports a $21 million arm's length price is enough for the Court to grant summary judgment to Defendant regarding the application of section 482.

### 3. Plaintiff's Arguments in Opposition

The Court now considers each of Plaintiff's arguments in opposing Defendant's motion for partial summary judgment and concludes that none of them are successful for the reasons stated below.

Plaintiff first argues that there are genuine issues of material fact that preclude the entry of summary judgment for the United States. Plaintiff claims that issues of fact exist as to

(a) Exactly what method or methods the Commissioner used to conduct the write down; (b) what was the best method required to be used as mandated by Treasury Regulation Section 1.482-1(c) or was some other method used; (c) exactly what was the value number that the debt was written down to; (d) even if it were

> undisputed, which it is not, did the Commissioner used fair market value, (e) if so, what was the fair market value of these debt instruments as the Commissioner never stated the value; (f) or even if fair market value was used, did the Chinese government and the Asset Management Companies have an intent to commit tax avoidance or tax evasion as a specified requirement under the Internal Revenue Code Section 482.

Pl.'s Opp'n to Def.'s Mot. at 2-3 (footnote omitted). As a preliminary matter, the Court reiterates that, in opposing a motion for summary judgment, Plaintiff may not simply assert that there are genuine issues of material fact regarding facts relied on by Defendant; Plaintiff must identify specific evidence in the record, evidence which is properly relied on for the purposes of summary judgment proceedings, that create the genuine issues of material fact. Even aside from Plaintiff's failure to include a statement of disputed material facts with his opposition, with respect to these purported issues of material fact, Plaintiff only cites to the Newman declaration, which the Court determined above may not be relied on, and the three paragraphs of the Hahn declaration. But it is unclear how the paragraphs in the Hahn declaration suggest any issues of fact with respect to the six items identified by Plaintiff as the cited paragraphs pertain to the actions of Hahn and Chenery Associates rather than the actions of Bank of China and China Orient, which are the subject of these purported issues of fact.[9]

---

[9] If anything, the Hahn declaration supports the valuation proposed by the government. The declaration references the valuation analysis conducted by PricewaterhouseCoopers that served as the basis for the acquisition price for the portfolio. Hahn Decl. ¶ 4. In the deposition, Hahn discusses this valuation analysis and its connection to the acquisition of the portfolio, indicating that the purchase price by the United States entities was approximately $21 million. Def.'s Statement of Material Facts, Ex. 2 (Hahn Deposition), at 20 ("Um, PricewaterhouseCoopers agreed to use a separate team and to prepare a valuation report for me about what I might expect to collect … So by 'expensive,' I mean that the value as a percentage of the face amount of the debts was approximately 10 percent in this transaction."); *id.* at 87 (China Orient's purchase price for the loan portfolio was "definitely not fair market value, and from memory, I believe it was the face amount of the debt plus what was called on-book accrued interest"); *id.* at 104 ("Q: Was there a fixed percentage for the purchase price in the 2001 portfolio vis-a-vis the face value and the amount owed to China Orient? A: It happened to be approximately 10 percent, but I don't

Moreover, insofar as Plaintiff argues that there are genuine issues of material fact as to the determination included in the FPAA and the methodology used to arrive at the determination, those are not material facts in this *de novo* proceeding, for all of the reasons explained above. Finally, with respect to the final issue that Plaintiff identifies—whether the Chinese entities had the intent to commit tax avoidance—the intent of those parties is irrelevant to the applicability of section 482. *See Your Host, Inc. v. Comm'r of Internal Revenue*, 58 T.C. 10, 24 (1972) *aff'd sub nom. Your Host, Inc. v. C. I. R.*, 489 F.2d 957 (2d Cir. 1973) ("Similarly, if there has been an actual shifting of income, purity of purpose and the presence of sound business reasons for forming multiple corporations are no defense under section 482. In short, section 482 does not deal with motivation and purpose as do section 269 and section 1551 but with economic reality."); *see also* Treas. Reg. § 1.482-1(f)(1)(i) ("**Intent to evade or avoid tax not a prerequisite.** In making allocations under section 482, the district director is not restricted to the case of improper accounting, to the case of a fraudulent, colorable, or sham transaction, or to the case of a device designed to reduce or avoid tax by shifting or distorting income, deductions, credits, or allowances.") (emphasis in original); *id.* § 1.482-1(f)(1) ("The authority to determine true taxable income extends to any case in which either by *inadvertence or design* the taxable income, in whole or in part, of a controlled taxpayer is other than it would have been had the taxpayer, in the conduct of its affairs, been dealing at arm's length with an uncontrolled taxpayer.") (emphasis added). Accordingly, the intent of the Chinese government, of Bank of China, and of China Orient is immaterial as to the issues in this case.

---

know that it was derived with respect to a particular percentage."); *id.* at 104-05 (confirming that face value of the loan portfolio in question was approximately $210 million).

Citing only to the Newman declaration—on which Plaintiff may not rely—Plaintiff also claims that "real found facts" are the following:

> (a) The People's Republic of China and the Asset Management Companies, including China Orient Asset Management Company, are not subject to the U.S. Internal Revenue Code; (b) China Orient Asset Management Company was not "owned" by the Sovereign State of China as defined in Section 482; (c) China Orient Asset Management Company was not "controlled" by the Sovereign State of China as defined in Section 482, <u>see</u> Neman Decl. 2, ¶¶ 4-6, and; (d) The Sovereign State of China decreed that the cost basis for computing gain or loss was the face amount of $217 million dollars in the acquisition transaction or transactions.

Pl.'s Opp'n at 3. Even aside from the fact that these purported facts are not supported by the record provided, they do not preclude the entry of summary judgment for defendant. With respect to (a), it is immaterial that the People's Republic of China and China Orient are not subject to the U.S. tax code. *See* Treas. Reg. § 1.482-1(i)(3) ("Taxpayer means any person, organization, trade or business, whether or not subject to any internal revenue tax."). With respect to (b) and (c), the Court concluded above that there are no genuine issues of material fact as to the ownership of China Orient and that, therefore, the Court need not address control over China Orient. With respect to (d), the Court notes that Plaintiff never indicated, before this statement in the opposition, that the Chinese government decreed anything regarding the cost basis for the sale of the loan portfolio; Plaintiff only indicated that the Chinese government decreed that the asset management companies, including China Orient, purchase the non-performing loans at face value. *See* Pl.'s Statement ¶ 12. Nor is there anything in the record to suggest that the Chinese government—or anything in Chinese law—decreed a certain cost basis in the non-performing loans acquired. In any event, even if Chinese law had spoken to the cost basis for the purposes of Chinese tax law, such a decree would not determine the application of U.S. tax law. *See Riggs Nat. Corp*, 163 F.3d at 1369. Accordingly, whether or not the Chinese government addressed the cost basis for the loan portfolio is not a material fact for the purposes of the pending motions.

Having determined that Plaintiff has not identified any genuine issues of material fact that would preclude the entry of summary judgment for Defendant with respect to the application of section 482, the Court turns to the other reasons that Plaintiff offers in opposing summary judgment—which are largely resolved by the Court's discussions above. Plaintiff next argues that summary judgment for Defendant is precluded because the section 482 adjustment in the FPAA was arbitrary and capricious due to the absence of an explanation for that adjustment in the FPAA. But as explained above, the evidence, explanations, and methodology in the FPAA are not subject to scrutiny in this *de novo* proceeding. Plaintiff then argues that the U.S. tax code does not apply to the Chinese entities and that the IRS may not infringe on Chinese sovereignty by applying the proposed adjustment. Defendant responds that China Orient voluntarily entered the U.S. tax system when it entered into arrangements with Roy Hahn, Austin Investment Fund, and other related entities. The Court need not address the nature of China Orient's relationship to the U.S. tax system, because the IRS is not levying any tax burden on the Chinese entities; the IRS is simply determining the tax implications of arrangements between foreign entities on Austin Investment Fund, an entity that is certainly subject to U.S. tax law. Moreover, section 482 explicitly specifies that it is applicable to entities "whether or not organized in the United States," 26 U.S.C. § 482, and the section applies to entities whether or not they are subject to U.S. taxes, Treas. Reg. § 1.482-1(i)(3). The IRS's action does not impinge on Chinese sovereignty and is well within the authority accorded to the IRS.[10] *See Riggs Nat. Corp*, 163 F.3d at 1369. Next, Plaintiff invokes the act of state doctrine, but the Court concluded above that the

---

[10] The Court notes that Plaintiff's claim that applying section 482 to the transactions in question would infringe on Chinese sovereignty is inconsistent with Plaintiff's claims that the Chinese government does not have the requisite control and ownership of those entities to satisfy the threshold requirements of section 482. Plaintiff cannot have it both ways.

act of state doctrine is inapplicable in these circumstances and that it does not bar the application

of section 482 to transactions among Bank of China, China Orient, and Austin. Next, Plaintiff

argues that the United States may not rely on the testimony of Roy Hahn and Philip Groves in

support of its cross-motion for partial summary judgment; but the Court explained above why the

testimony can serve as the basis for Defendant's motion because Defendant could present that

evidence in admissible form at trial. Finally, to the extent that Plaintiff relies on his own motion

for partial summary judgment in opposing Defendant's cross-motion for partial summary

judgment, the Court explained above why Plaintiff's motion fails as a matter of law. For those

same reasons, Plaintiff cannot rely on the arguments in support of that motion in opposing

Defendant's cross-motion for partial summary judgment.

*      *      *

In sum, all of Plaintiff's arguments opposing Defendant's motion for partial summary

judgment are unavailing. The Court concludes that there are no genuine issues of material fact

with respect to the entry of partial summary judgment for Defendant. The Court concludes that

the arm's length price for the portfolio of loans acquired by China Orient is no more than $21

million. As explained here, in light of that conclusion, the Court sustains the IRS's disallowance

of Austin's losses in the FPAA for tax years 2003 and 2004 on the grounds of the application of

section 482.

In December 2001, Austin received a 23% interest in the Yuanjiang portfolio. Def.'s

Statement of Material Facts ¶¶ 28, 31; *see also* March 19, 2015, Hahn Decl. ¶ 17, ECF No. 114-3

(submitted in support of Plaintiff's motion for partial summary judgment). The face value of the

23% share was approximately $43 million, 23% of the face value of the entire $210 million

portfolio. Def.'s Statement of Material Facts ¶ 32. The face value of the portfolio in December

2001 was not materially different from the face value of the portfolio when China Orient acquired it from Bank of China. *Id.* ¶ 32. For Austin's share, Roy Hahn paid China Orient approximately $4.8 million, or 10% of the $48 million face value. *Id.* ¶ 33. Before December 2002, Austin's share of the portfolio was reduced from 23% to 19.24% by selling approximately 3.76% to other funds. *Id.* ¶ 34. Accordingly, Austin's carryover basis in its share of the portfolio was 19.24% of the $21 million purchase price, which is approximately $4 million.[11] *Id.* For tax years 2002 through 2004, Austin claimed losses attributable to the portfolio in the amount of $33 million for 2002; $1,989,922 for 2003; and $2,169,266 for 2004. *Id.* ¶ 39. The 2002 loss reflected a bad debt deduction, while the loses for 2003 and 2004 appear to reflect the difference between Austin's share of the amounts collected on loans in the portfolio and the purported face value of those loans. *Id.* ¶ 40. Plaintiff has not disputed any of these facts.

Because Austin's basis in its share of the loan portfolio was no more than $4 million, the $33 million bad debt deduction in 2002 wholly exhausted the losses available from this portfolio. Therefore, no losses or deductions were available for 2003 or for 2004. On these grounds, the Court sustains the IRS's disallowance of losses and deductions attributable to the Yuanjiang portfolio for 2003 and 2004.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's [114] Motion for Partial Summary Judgment and GRANTS [118]/[119] Defendant's Cross-Motion for Partial Summary Judgment. The Court sustains the IRS's disallowance of Austin's claimed deductions and losses

---

[11] As explained above, the Court assumes, only for the purposes of this motion, that it was proper for Austin to have a carryover basis based on "contributions" from China Orient in the first place.

attributable to the Yuanjiang portfolio for 2003 and for 2004 on the basis of the application of section 482 to the transaction between Bank of China and China Orient.

     An appropriate Order accompanies this Memorandum Opinion.

Dated: November 19, 2015

                                                    ____/s/_____
                                                    COLLEEN KOLLAR-KOTELLY
                                                    United States District Judge